491 So.2d 1150 (1986)
Raymond Nathan TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1426.
District Court of Appeal of Florida, Fourth District.
April 9, 1986.
Rehearing Denied August 20, 1986.
Richard L. Jorandby, Public Defender, and Ellen Morris, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert S. Jaegers, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
The defendant appeals from his judgment and sentence. We affirm the former but strike the assessment of costs against the appellant without prejudice to imposition after notice and hearing.
Appellant was arrested for hitting his next door neighbor, Charles Prince, with a baseball bat, and charged with aggravated battery. Mr. Prince was treated for a nosebleed in September 1984; a month later he was found dead. The charges against appellant were then increased to second degree murder.
At voir dire during appellant's trial, defense counsel claimed that the prosecutor was improperly using his peremptory challenges to systematically exclude all prospective black jurors. Both appellant and the victim were black as were many of the State's witnesses. The trial court found that there was no improper exclusion.
Appellant attempted to introduce the testimony of a paralegal clerk for the State Attorney's office. The trial court found the evidence irrelevant. The clerk's proffered testimony was a statement indicating that it was necessary to file a police report before her office would process a complaint.
Appellant was found guilty of third degree murder and sentenced to six years. The judgment imposed costs. He now appeals the denial of his motion for a new trial and the imposition of costs without notice or hearing.
The first of two issues we feel warrant discussion is whether the trial court erred in finding that defense counsel had not met his burden of demonstrating on the record that the prosecutor's peremptory challenges *1151 were exercised solely on the basis of race.
Appellee first argues that appellant did not make a timely objection. We find that the objection was timely.
We next address whether the questioned challenges were exercised in a non-discriminatory manner. State v. Neil, 457 So.2d 481 (Fla. 1984), states that there is a presumption the peremptories will be exercised in a non-discriminatory manner. Id. at 486. In the present case, the prosecutor struck five blacks and three whites from the jury pool.
Neither the prosecutor nor the trial court appeared to be familiar with the Neil decision and they did not follow its directive when the issue was brought up.[1]
In the present case, defense counsel did not initially demonstrate on the record "that there is a strong likelihood that they have been challenged solely because of their race," he simply pointed out that all prospective black jurors had been challenged. The trial court found that the objection was untimely. Without being asked, the prosecutor volunteered his reasons as to why he excluded some of the blacks. The judge found these reasons satisfactory, but still inquired as to why the prosecutor challenged other blacks. Since the trial judge did ask for justification, it is appropriate to examine the answers given. See Hale v. State, 480 So.2d 115, 116 n. 1 (Fla. 2d DCA 1985).
Juror number fifteen had a relative accused of murder. This would clearly seem to be an adequate reason. See, e.g., Cotton v. State, 468 So.2d 1047 (Fla. 4th DCA 1985). The prosecutor stated that he challenged juror number twenty-six because "of her reaction towards her three kids. She was trying to hurry up the proceedings. I don't think she could be fully alert." The court said the defense counsel's objection as to juror number twenty-six was valid but that it was not timely. Juror number twenty-six was validly excluded. It is important to remember that reasons given for exclusion need not be equivalent to those for a challenge for cause; the prosecutor need only show that the "challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons *1152 other than race." Neil at 487. A review of the record clearly indicates that juror number twenty-six was impatient and did not want to be a juror. Juror number sixteen had a son who was in prison for stealing a gold necklace and had an illness that could present a problem with the conduct of the trial. This too, was a valid reason for exclusion. Cotton.
The prosecutor stated he struck male jurors five and nineteen because they were approximately the same age as the defendant and he did not like the way the jurors related to him, or their attitudes. At first blush, this would seem to present the greatest problem. While age is definitely a characteristic, this reason still seems rather tenuous.
Nevertheless, in considering whether such a reason is valid, it is important to keep in mind the nature of a peremptory challenge. As stated by Justice Alderman in his dissent (joined by Boyd and Adkins) in Neil:
The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. State v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949); Lewis v. United States, 146 U.S. 370, 378 [13 S.Ct. 136, 139, 36 L.Ed. 1011]. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. Hayes v. Missouri, 120 U.S. 68, 70 [7 S.Ct. 350, 351, 30 L.Ed. 578]. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," Lewis, supra [146 U.S.], at 376 [13 S.Ct. at 138], upon a juror's "habits and associations," Hayes v. Missouri, supra [120 U.S.], at 70 [7 S.Ct. at 351] or upon the feeling that "the bare questioning [a juror's] indifference may sometimes provoke a resentment," Lewis, supra, [146 U.S.] at 376 [13 S.Ct. at 138]. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the voir dire, by both prosecutor and accused, Miles v. United States, [13 OTTO 304], 103 U.S. 304 [26 L.Ed. 481]; Aldridge v. United States, 283 U.S. 308 [51 S.Ct. 470, 75 L.Ed. 1054]. This Court has held that the fairness of trial by jury requires no less. Aldridge, supra. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.
457 So.2d at 488-89, quoting Swain v. Alabama, 380 U.S. 202, 220-21, 85 S.Ct. 824, 835-36, 13 L.Ed.2d 759 (1965) (footnotes omitted).
It is also interesting to note that since Neil was decided, no Florida district court nor the Supreme Court has specifically found a reason given by a prosecutor unacceptable. (There are cases reversing for failure of the trial court to conduct an inquiry and there are a few short per curiam reversals where it is difficult to tell why the court reversed.)[2]
*1153 Additionally, it should be noted that the prosecutor also stated he excluded the two questioned blacks because he did not like their background or the way they related to him. While these reasons may seem vague, it should be remembered that the trial judge who was present and able to observe their demeanor, found the two had been validly challenged.
Neil puts the initial burden on the defense. Based on the above, defense counsel never met its burden of demonstrating on the record "that there is a strong likelihood that they have been challenged solely because of their race."[3]
The second issue arises out of the judgment's indication that appellant is to pay the sum of $15.00 pursuant to section 960.20, Florida Statutes, and to pay the sum of $2.00 as a court cost pursuant to section 943.25(4), Florida Statutes.
There is nothing in the record to indicate that appellant, who had been adjudicated indigent, was given notice and an opportunity to object to the assessment of costs ordered by the judgment. Accordingly, the assessment of $17.00 in costs must be stricken without prejudice to the state to seek taxation of these costs against appellant after proper notice and hearing. Foust v. State, 478 So.2d 111 (Fla. 2d DCA 1985); Jenkins v. State, 444 So.2d 947 (Fla. 1984).
LETTS and DELL, JJ., concur.
NOTES
[1] In Parker v. State, 476 So.2d 134, 138 (Fla. 1985), the Supreme Court applied the Neil test:

In State v. Neil we established the following test:
The initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race.
Id. at 486-87 (emphasis supplied; footnotes omitted). Although Parker has shown that the challenged prospective jurors belonged to a "distinct racial group," it is clear from this record that he failed to demonstrate "a strong likelihood" that these prospective jurors were challenged solely on the basis of their race. This record does not reveal the requisite likelihood of discrimination to require an inquiry by the trial court and a shifting of the burden to the state. In fact, we find this record reflects nothing more than a normal jury selection process. For these reasons, we find no error in the jury selection process in this cause.
In Cotton v. State, 468 So.2d 1047, 1048 (Fla. 4th DCA 1985), this court stated:
Thus, we learn from Neil that, before requiring the offending party to demonstrate that the questioned challenges were not exercised solely because of a prospective juror's race, the offended party must "demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race." No such showing was made here, nor could it have been.
See also Finklea v. State, 471 So.2d 608, 610 (Fla. 1st DCA 1985) (appellant merely pointing out that all blacks have been excluded is not sufficient showing).
[2] Appellant contends that these reasons are not valid because they pertained to other jurors in the pool who were not stricken, citing People v. Hall, 35 Cal.3d 161, 197 Cal. Rptr. 71, 75, 672 P.2d 854, 858 (1983) (en banc) (reasons proffered by prosecutor for peremptorily excluding blacks were equally applicable to whites not excused; held defendant's prima facie showing of improper exclusion not rebutted). In support of this contention appellant states that other jurors were in the same age range. The record indicates that Mr. Flynn, juror number three, had two grown children; that juror number eight, Ms. Dahl, is retired with two grown children; and that juror number twenty-two, Mr. Rollins, is a retired school principal who lifts weights and works part time in a coin shop. The defendant in this case was fifty-two-years-old at the time of the trial.

Mr. Flynn, juror number three, was struck by defense counsel. Juror number eight was female. Although juror number twenty-two, Mr. Rollins, was retired from school teaching, he was still working and it is impossible to tell his age from the record.
Appellant's argument that other jurors were the same age (and sex) was not brought up before the trial court. Defense counsel simply pointed out that all blacks had been excluded; and when the prosecutor gave his reasons, he then stated that the reasons were invalid.
[3] While we do not find that any of the five blacks were improperly excluded, it is unclear whether improper exclusion of one or two of the blacks would constitute a violation of Neil. While one might assume that it would, language in Cotton would seem to suggest that it may not:

Thus, we learn from Neil that, before requiring the offending party to demonstrate that the questioned challenges were not exercised solely because of a prospective juror's race, the offended party must "demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race." No such showing was made here, nor could it have been.
Without burdening this opinion with the voir dire interrogation of each juror, suffice to say that the record reflects the exclusion of a number of blacks from the jury, but in almost each instance there was a valid basis for exclusion other than race.
468 So.2d at 1048-49.
We leave that issue to another day.